**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: January 22, 2019
Date Decided: March 19, 2019

John L. Reed, Esquire
Ethan H. Townsend, Esquire
DLA Piper LLP
1201 N. Market Street, Suite 2100
Wilmington, DE 19801

Thad J. Bracegirdle, Esquire
Scott B. Czerwonka, Esquire
Wilks, Lukoff & Bracegirdle, LLC
4250 Lancaster Pike, Suite 200
Wilmington, DE 19805

Re: *Quantlab Group GP, LLC, et al. v. Eames, et al.*; C.A. 2018-0553-JRS

Dear Counsel:

This decision is the latest chapter in protracted litigation between two factions battling over the *de jure* management of Quantlab Group LP ("Quantlab LP"), a Delaware limited partnership.[1] I discussed the factual background of the dispute at some length in a previous opinion.[2] Aside from more litigation, nothing much has changed since my last dispatch. Accordingly, I refer interested readers to the factual summary set forth there and turn directly to the relevant procedural history and contentions of the parties.

---

[1] Compl. ¶¶ 32–42.

[2] *Eames v. Quantlab Gp. GP, LLC*, 2018 WL 2041548 (Del. Ch. May 1, 2018).

## I. BACKGROUND

The control dispute between these parties first came before the Court on November 6, 2017, when Defendants here, Bruce Eames and Andrey Omeltchenko, filed a complaint under 6 *Del. C.* § 17-110 seeking declarations that: (1) Quantlab Group GP, LLC II ("Quantlab GP II"), an entity affiliated with Eames and Omeltchenko, had been validly elected as a general partner of Quantlab LP; and (2) Plaintiff here, Quantlab Group GP, LLC ("Quantlab GP"), an entity affiliated with W.E. Bosarge, had been validly removed as Quantlab LP's general partner. On December 14, 2017, Quantlab GP moved for partial summary judgment in that action on the ground that the purported election of Quantlab GP II and removal of Quantlab GP as general partner was ineffective as a matter of contract (and, therefore, as a matter of law). The contracts identified by Quantlab GP as relevant to the dispute were: (1) Quantlab LP's fourth amended limited partnership agreement (the "LPA"); (2) Quantlab GP's LLC Agreement, (the "LLC Agreement"); and (3) a voting trust agreement among certain limited partners of Quantlab LP (the "VTA").

On May 1, 2018, I issued a letter opinion where I determined Quantlab GP II had not been validly elected and Quantlab GP had not been validly removed as a

general partner of Quantlab LP.[3]  In reaching this conclusion, I did not address the VTA, its validity or its effect on the LPA.  Instead, the decision rested on the unambiguous terms of the LPA and the LLC Agreement.  The Court's final judgment, entered on May 4, 2018, was not appealed.

On June 4, 2018, Eames and Omeltchenko, along with their respective wholly-owned LPs, filed an action in Texas against Quantlab GP.  In their Texas complaint, Eames and Omeltchenko sought a declaration of their rights under the VTA[4] as a predicate to determining "[w]ho now controls" Quantlab LLC.[5]

Frustrated by Eames and Omeltchenko's apparent attempt to end-run this Court's May 4, 2018 judgment, on June 26, 2018, Bosarge, through Quantlab GP, moved to enforce or, alternatively, to modify that judgment to incorporate a declaration of rights under the VTA.[6]  I denied that motion on July 20, 2018, upon observing that I expressly had not passed on the validity of the VTA in granting summary judgment to Quantlab GP and it did not appear that Eames and

---

[3] *Eames v. Quantlab Gp. GP, LLC*, 2018 WL 2041548, at *6.

[4] Texas Compl. Ex. Q ¶¶ 13, 55.

[5] Texas Compl. Ex. Q ¶ 13.

[6] First Del. Action, D.I. 94 at 1, 6.

Omeltchenko were attempting to relitigate the Delaware action in Texas. I noted, based on notions of comity, that I was not inclined to enter an order here that would or could be read to impede the Texas court's ability to decide how best to adjudicate a discrete matter pending before it.[7]

Four days after I denied Quantlab GP's motion to enforce or modify, Quantlab GP amended the LPA "[t]o clarify the VTA's lack of effect on the [LPA]."[8] The amended Section 17.12 of the LPA reads, in relevant part:

> For avoidance of doubt, this Agreement is not in any way restricted by or subject to the terms of the Voting Trust Agreement and any vote or purported vote by a voting trustee under the Voting Trust Agreement shall have no force or effect on the Partnership, the Agreement, or any matter voted on, consented to, or approved by the Partners.[9]

Three days after that amendment, on July 27, 2018, Quantlab GP filed this action against the same parties who brought the Texas action and moved for an expedited schedule.[10] Quantlab GP's Complaint seeks a declaration that the amendment to LPA Section 17.12 is valid under 6 *Del. C.* §§ 17-110 and 17-111,

---

[7] *Id.*

[8] Compl. ¶ 63.

[9] Compl. Ex. R.

[10] Compl. ¶¶ 3–10; Pls.' Mot. to Expedite.

and 10 *Del. C.* § 6501.[11]  It also seeks a declaration that, separate and apart from the amendment, the VTA cannot be employed as a means to modify the LPA or to replace the general partner.[12]

On August 22, 2018, Defendants moved to dismiss or stay this action in favor of the Texas action.  I denied that motion, in large part, based on Defendants' prior representations that the Texas litigation would not address the broader question of who should manage Quantlab LP as general partner, a question that is directly called by the Complaint in this Delaware action.[13]  After their motion to dismiss was denied, Defendants filed their Answer and Counterclaims where they deny Plaintiff's claims and assert mirror image Counterclaims for declaratory relief.

The dispute *sub judice*, as before, turns on the construction of the constitutive documents of Quantlab LP.  The parties have filed cross motions for partial summary judgment where they proffer their respective interpretations of the documents as controlling and, in turn, argue that judgment in their favor is required as a matter of

---

[11] Compl. ¶¶ 72–79.

[12] Compl. ¶¶ 2, 79, 87, 94, 102.

[13] *Quantlab Gp. GP, LLC v. Eames*, 2018 WL 5778445 (Del. Ch. Nov. 2, 2018).

law.   Defendants also seek summary judgment on their affirmative defense of "unclean hands."

Plaintiffs say Defendants cannot use the VTA to amend the LPA in order to effect the removal of the general partner.  As recognized in this Court's May 4, 2018 judgment, Quantlab GP currently serves as Quantlab Group's sole general partner. Under Sections 5.3 and 5.4 of the LPA, only Quantlab Group's Class A limited partners have the right to admit or remove the Company's general partner, subject to the general partner's approval rights.[14]  Specifically, under Section 5.3 of the LPA, "additional General Partners may be admitted only with the consent of all General Partners **and** the consent of a Super Majority" of the Class A limited partners.[15] Section 5.4 provides, "a General Partner may not be removed unless there is at least one remaining General Partner," and only a "Super Majority" of the Class A "have the right, for any reason, to remove an existing General Partner."[16]   "Super

---

[14] POB Ex. I §§ 5.3, 5.4.

[15] *Id.* § 5.3 (emphasis supplied).

[16] *Id.* § 5.4.

Majority," in turn, is defined in the LPA as the limited partners owning at least 80%

of the Class A-2 "Interests."[17]

> The LPA contains an unambiguous Integration Clause at Section 17.12:
>
> This Agreement contains the entire agreement among the Partners with respect to the matters of this Agreement and shall supersede and govern all prior agreements, written or oral, including, without limitation, the Amended Agreement.[18]

The term "Amended Agreement" is defined in the Second WHEREAS clause as

"that certain Third Amendment and Complete Restatement of the Agreement of

Limited Partnership."[19]  Consistent with this Integration Clause, Plaintiffs argue the

LPA does not refer to, rely on or otherwise incorporate other agreements or writings.

Defendants maintain the VTA governs the voting rights of the voting trust

members with respect to the LPA.  They also maintain that nothing in the LPA would

prevent the parties to the VTA from utilizing the voting trust to effect the removal

and replacement of Quantlab LP's general partner.

---

[17] *Id.* § 1.136.

[18] *Id.* § 17.12.

[19] POB Ex. I, Second WHEREAS Clause; *see also id.* § 1.9 ("'Amended Agreement' has the meaning set forth in the recitals to this Agreement.").

## II. ANALYSIS

For reasons I explain briefly below, I am satisfied Counts I and II of Defendants' Counterclaims should be summarily dismissed as duplicative of Plaintiffs' Count II. I also find, as I did before, that the LPA is unambiguous. Based on the only reasonable construction of that fully integrated agreement, I am satisfied its governance provisions are not and cannot be modified by the VTA. Consequently, the VTA cannot be employed as a means to accomplish the removal of Quantlab LP's general partner in a manner inconsistent with the LPA. Having so found, Plaintiffs' motion for summary judgment must be granted.

### A. Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[20] "When the issue before the Court involves the interpretation of a contract, summary judgment is appropriate only if the contract in question is unambiguous."[21] In other words, in the procedural context of cross motions for summary judgment, in order

---

[20] Ct. Ch. R. 56(c).

[21] *United Rentals, Inc. v. RAM Hldgs., Inc.*, 937 A.2d 810, 830 (Del. Ch. 2007).

to prevail, one of the parties "must establish that its construction of the [contract] is the *only* reasonable interpretation."[22]  If both parties offer arguably reasonable constructions, even if one might appear more reasonable than the other, the Court "may, in its discretion, deny summary judgment [so that it may] . . . inquire into and develop the facts more thoroughly at trial in order to clarify the law or its application."[23]

## B. Defendants' Counts I and II Are Dismissed Summarily

Counterclaims that are "simply a restatement or specification of the answer denying liability" must be dismissed as contrary to "the purposes of the [Delaware] Declaratory Judgment Act."[24]  This result is justified because counterclaims that are

---

[22] *Id.* (emphasis in original).

[23] *Calesa Assocs., L.P. v. Am. Capital, Ltd.*, 2018 WL 4026976, at \*1 (Del. Ch. Aug. 22, 2018) (citing *Chen v. Howard-Anderson*, 87 A.3d 648, 665 (Del. Ch. 2014)).  Even if the Court determines that one party's reading of the contract is more reasonable or "natural," that does not preclude a finding of ambiguity.  *Bank of New York Mellon v. Commerzbank Capital Funding Tr. II*, 65 A.3d 539, 550 (Del. 2013) ("[A]lthough the 'more natural[]' reading is a factor to be considered, it does not conclude the analysis.  Even a 'less natural' reading of a contract term may be 'reasonable' for purposes of an ambiguity inquiry.") (citing *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992)).

[24] *In re RJR Nabisco, Inc., S'holders Litig.*, 1990 WL 80466, at \*1 (Del. Ch. June 12, 1990).

redundant of the original claims will be rendered moot by the adjudication of the affirmative claims.[25]

As Defendants concede, "[their] Counts I and II mirror those of Plaintiff[s'] pleadings."[26] Thus, an adjudication of the claims raised in "Plaintiff[s'] pleadings" will render Defendants' Counterclaims moot. The Counterclaims, therefore, are summarily dismissed.

### C. The LPA Is Not Subject To The VTA

"[I]n determining whether a contract is fully integrated, the court focuses on whether it is carefully and formally drafted, whether it addresses the questions that would naturally arise out of the subject matter, and whether it expresses the final

---

[25] *See e.g.*, *CSH Theatres, LLC v. Nederlander of San Francisco Assocs.*, 2015 WL 1839684, at *5 n.23 (Del. Ch. Apr. 21, 2015) (defendant's counterclaim was "not at issue . . . because it essentially [was] duplicative of" plaintiff's claims); *Metro. Life Ins. Co. v. Tremont Gp. Hldgs., Inc.*, 2012 WL 6632681, at *18 (Del. Ch. Dec. 20, 2012) ("When presented with two redundant or identical claims, a court may decline to consider one claim or the other."); *Duffy v. State*, 536 A.2d 615 (Del. 1987) (TABLE) (affirming trial court's summary dismissal of "redundant" claims). *See also PHL Variable Ins. Co. v. Helene Small Ins. Tr. ex rel. Wilm. Sav. Fund Soc., FSB*, 2012 WL 5382905, at *1 (D. Del. Nov. 1, 2012) (dismissing counterclaims because "[t]he additional matters for which a declaratory judgment is sought are merely restatements of the Defendant's second, fourth, fifth and seventh defenses, and as such, will again be resolved upon adjudication of the underlying claims.").

[26] Defs.' Opening Br. in Support of Their Mot. for Partial Summ. J. ("DOB") 1 n.1.

intentions of the parties."[27] Unlike the restrictions imposed upon the court by the parol evidence rule when construing particular provisions of a contract, the court "may consider extrinsic evidence to discern if [a] contract is completely or partially integrated."[28]

The LPA does not refer to nor rely upon any other agreement. It reflects, instead, the "entire agreement" "among the Partners" "with respect to the matters of th[e] Agreement,"[29] and "supersede[s] and govern[s] all prior agreements, written or oral," including "without limitation," the Third Amended LPA.[30] The "matters of

---

[27] *Addy v. Piedmonte*, 2009 WL 707641, at *9 (Del. Ch. Mar. 18, 2009) (citing *Hynansky v. Vietri*, 2003 WL 21976031, at *3 (Del. Ch. Aug. 7, 2003)).

[28] *Id.* (citing E. Allan Farnsworth, 1 FARNSWORTH ON CONTRACTS, § 7.3, at 231 (3d ed. 2004)). *See* Restatement (Second) of Contracts § 213 cmt. b (1981) ("Those determinations [*i.e.*, whether "there is an integrated agreement and that it is inconsistent with the term in question"] are made in accordance with all relevant evidence, and require interpretation both of the integrated agreement and of the prior agreement."); Restatement (Second) Contracts § 214 (1981) ("Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish," among other things, "that the writing is or is not an integrated agreement" or "that the integrated agreement, if any, is completely or partially integrated.").

[29] Pls.' Opening Br. in Supp. of Their Mot. for Partial Summ. J. ("POB"), Ex. I § 17.12.

[30] *Id. See ev3, Inc. v. Lesh*, 114 A.3d 527, 533 (Del. 2014) (holding where an agreement contains an integration clause, that agreement "supersede[s] all prior agreements and understandings between the parties, except for those contained in the [current agreement]"); Restatement (Second) Contracts § 213(2) (1981) ("A binding completely

[the LPA]" include the governance of Quantlab LP: (i) Quantlab LP's partners' rights and obligations; (ii) the management of the partnership; and (iii) how the partners vote.[31]

After signing the VTA on September 1, 2010, the parties to the voting trust amended Quantlab LP's then operative limited partnership agreement.[32] That amendment, the First Amended LPA, dated September 1, 2010, explicitly recognized and incorporated the VTA, as required by the VTA itself.[33]

Nearly five years later, on July 24, 2015, all of the parties to the VTA executed the Second Amended LPA. That agreement overtly removed any reference to the VTA.[34] On December 31, 2015, all of the parties to the VTA executed the Third

---

integrated agreement discharges prior agreements to the extent that they are within its scope.").

[31] POB Ex. I.

[32] I note that the original Voting Trust Agreement was dated January 1, 2009. That agreement was amended by the Amended and Restated Voting Trust Agreement, effective January 1, 2010. According to Defendants, this agreement reflects the operative voting trust.

[33] *See* POB Ex. F. The language from Section 2.4.1 of the VTA was incorporated into the original LPA with the First Amendment to the LPA.

[34] *See* POB Ex. G. The parties also deleted the recital clause from the Amended LPA specifically referring to and defining the VTA.

Amended LPA and, again, that agreement made no reference to the VTA.[35] Finally, the "Fourth Amendment and Complete Restatement" of the LPA—the current operative agreement, effective January 1, 2016—likewise contains no mention of the VTA or any other voting trust.[36]

Defendants maintain this history is irrelevant since the LPA need not formally incorporate the VTA in order for the VTA's voting provisions to modify the LPA's provisions relating to the removal of the general partner.[37] I disagree. The plain language of the VTA requires that it be incorporated into the operative limited partnership agreement to be effective, at least with respect to the limited partnership agreement. Specifically, Section 2.4.1 of the VTA provides: "[t]he parties . . . shall take all such actions as may be necessary under [Delaware Revised Uniform Limited Partnership Act ("DRULPA")] or the [LPA] to amend the [LPA] in order to add the following provision: This Limited Partnership Agreement . . . is restricted by and

---

[35] *See* POB Ex. H.

[36] *See* POB Ex. I.

[37] Defs.' Answering Br. in Opp'n to Pls.' Mot. for Partial Summ. Judg. ("DAB") 21–24.

subject to the Terms of that certain Voting Trust Agreement dated as of January 1, 2009 . . . ."[38]

Under DRULPA and the LPA, the designated language in the VTA was required to be "added" to the LPA. Section 11.5 of the LPA provides that any "Assignee" of a partnership interest "has only the rights granted under Section 17-702(a)(3) of [DRULPA]."[39] Section 17-702(a)(3) of DRULPA, in turn, provides, "[a]n assignment of a partnership interest entitles the assignee to share in such profits and losses, to receive such distribution or distributions, and to receive such allocation of income, gain, loss, deduction, or credit or similar item to which the assignor was entitled, to the extent assigned."[40] Because voting rights are not transferred under Section 17-702(a)(3)'s bundle of rights, in order for the putative assignee of a limited partner's voting interest (i.e., the voting trustee) actually to enjoy any right to vote, Section 11.5 of the LPA requires that the assignment be expressly (and separately) recognized and incorporated in the LPA. Accordingly, as the parties to the VTA clearly understood, for the VTA to assign voting rights under the LPA, the VTA

---

[38] POB Ex. E § 2.4.1.

[39] POB Ex. I § 11.5(d).

[40] 6 *Del. C.* § 17-702(a)(3).

must be incorporated into the LPA.[41]  Because the parties to the VTA never took any "action" to amend the current LPA to add the designated Section 2.4.1 text, or any other "incorporation by reference" text, the VTA cannot modify the otherwise fully integrated LPA.

Apparently recognizing that the parties' decision not to incorporate the VTA into the LPA renders the VTA inoperative for their purposes, Defendants retreat to a position that the VTA somehow imposes an "ongoing contractual duty" upon the parties to amend the LPA to incorporate the VTA.[42]  No such language appears in the VTA and, moreover, the drafting history of the LPA reveals that all of the signatories to the VTA agreed to remove any reference to the VTA in the LPA.[43]

---

[41] In fact, on January 8, 2009, the parties to the VTA were advised by counsel that "the partners may still want to amend the [LPA] to ensure that any successor limited partner takes the limited partnership interest subject to the terms of the [VTA].  I have revised this section in order to provide for such an amendment if you decide to take this route." Transmittal Aff. of Ethan H. Townsend, Ex. D.

[42] DAB 24–25.

[43] As noted, the "Second Amendment and Complete Restatement" of the LPA, dated July 24, 2015, effective as of July 18, 2013, removed any reference to the VTA, including omitting the Incorporation Provision required under Section 2.4.1 of the VTA and removed a WHEREAS clause from the First Amended LP Agreement that specifically referenced the 2009 VTA.  POB Ex. G.  The "Third Amendment and Complete Restatement" of the LPA, dated December 31, 2015, again omitted all references to the VTA.  POB Ex. H. Specifically, the section defining "Voting Interest" entirely omitted any reference to any form of voting trust agreement.  *Id.* § 1.143.  Finally, the Fourth Amendment and Complete

If there was some "ongoing contractual duty" to incorporate, then all of the parties to the VTA have breached the VTA multiple times.[44]

The LPA's Integration Clause states the LPA "contains the entire agreement among the Partners with respect to the matters of this Agreement."[45]  Even so, Defendants argue because "there is not a single provision in the Fourth Amended and Restated LPA that actually speaks to the process of 'how' Partners are to vote," the VTA's provisions that spell out "the how" are not excluded by the LPA's

---

Restatement of the LPA, dated to be effective January 1, 2016, also contains no mention of the VTA or any other form of VTA.  POB Ex. I.  Every iteration of the LPA has contained some form of an integration clause.  *See* POB Ex. C § 3(d); POB Ex. F § 19.12; POB Ex. G § 17.12; POB Ex. H § 17.12; POB Ex. I § 17.12.

[44] The only way the LPA could be amended without the vote of all limited partners is under Section 17.9 of the LPA that prohibits amendments disproportionately and adversely affecting the rights of a Partner or class of Partners.  The Class A limited partners are not the "only Partners with voting interests in Quantlab Group," as Defendants argue on page 25 of their Answering Brief.  Under Section 5.12 of the LPA, "all Limited Partners shall have the right to vote upon . . . [the] Amendment of [the LP Agreement]."  POB Ex. I § 5.12(a)(ii).

[45] POB Ex. I § 17.12.  Defendants argue that the phrase "among the Partners" somehow excepts the VTA from the Integration Clause because there is not exact parity of partners between signatories of the VTA and LPA.  I disagree.  The word "among" does not necessarily mean a condition applies equally to all members of the referenced group. *See, e.g.*, *Chicago Manual of Style* 269 (16th ed. 2010) ("Between indicates one-to-one relationships . . .  Among indicates undefined or collective relationships.").

Integration Clause.[46] Defendants read the LPA too narrowly. The LPA expressly governs the Limited Partnership's partners' substantive voting rights.[47] It also addresses specifically the process by which a general partner may be elected to the limited partnership and the process by which a general partner may be removed.[48] Thus, the LPA is fully integrated with regard to these subjects and cannot be altered or supplemented by another unincorporated agreement, including the VTA.[49]

### D. Defendants' Unclean Hands Defense Fails as a Matter of Law

Defendants' unclean hands defense is unavailable because Plaintiffs' claims do not invoke equity and are not, therefore, subject to equitable defenses.[50] Moreover, even if the defense was available, Defendants have pled no facts allowing an inference that Plaintiffs' actions left them "tainted with inequitableness or bad

---

[46] DAB 29–30.

[47] *See, e.g.*, POB, Ex. I §§ 1.136, 1.137, 1.144, 5.12(a) (defining each partner's voting rights and the thresholds necessary to obtain a "Super Majority").

[48] POB Ex. I §§ 5.3, 5.4.

[49] *See* Restatement (Second) Contracts § 213(2) & cmt. c (1981) ("A binding completely integrated agreement discharges prior agreements to the extent that they are within its scope.").

[50] *Lehman Bros. Hldgs. v. Spanish Broad. Sys., Inc.*, 2014 WL 718430, at *7 (Del. Ch. Feb. 25, 2014), *aff'd*, 105 A.3d 989 (Del. 2014) (explaining that unclean hands "does not apply to a plaintiff seeking *legal* relief") (emphasis in original).

faith."[51] None of the statements Defendants have proffered in support of the unclean hands defense were made by any of the Plaintiffs, or by individuals under Plaintiffs' control.[52]

### E. Defendants' Rule 56(f) Request Is Denied

As their last stand, Defendants ask the Court to defer ruling on the cross motions so that the parties can conduct discovery of parol evidence relating to the VTA and LPA and in support of their affirmative defenses. The request is denied. The Court has determined that the VTA and LPA are unambiguous; there is no need for parol evidence to interpret those agreements. The relevant parol evidence with respect to integration is already before the Court. And Defendants have failed to identify any specific discovery that would inform the Court's consideration of their

---

[51] *SmithKline Beecham Pharm. Co. v. Merck & Co.*, 766 A.2d 442, 449 (Del. 2000).

[52] *See, e.g.*, DAB Exs. N (Aug. 10, 2017 letter from Norton Rose Fulbright US LLP on behalf of Quantlab Europe stating, in part, "the voting interests of the Class A limited partners (Marco, LP, Veloce, LP & AVG Holdings, LP) are held in a voting trust."), R (Sept. 13, 2017 email from Simon Garfield stating that the referenced voting trust agreement "is an agreement among the Class A limited partners of Quantlab Group, LP."). Quantlab Europe has its own board of directors. Aff. of Simon Garfield ("Garfield Aff.") ¶ 4. Simon Garfield does not represent any of the Plaintiffs. Garfield Aff. ¶ 3.

affirmative defenses.[53]   Indeed, Defendants themselves acknowledge there are no facts in dispute when arguing that summary judgment in their favor is justified.  I agree—there is no need for discovery here.

### III.   CONCLUSION

For the above reasons, Plaintiffs' motion for summary judgment as to Count II in their Verified Complaint is **GRANTED**.[54]   Defendants' cross motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*

---

[53] *See* Ct. Ch. R. 56(f).

[54] Given this holding, the Court need not address Count I in Plaintiffs' Complaint that addresses the validity of the purported amendment to the LPA that expressly nullified the effect of the VTA.